# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JULIO VILLARS ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 12 CV 4586 |
| v. ) | |
| ) | Judge Robert M. Dow, Jr. |
| STEPHEN KUBIATOWSKI as Assistant ) | |
| United States Attorney for the Northern ) | |
| District of Illinois; MAURY STRAUB as ) | |
| Ozaukee County Sheriff; JEFFREY SAUDER ) | |
| as Ozaukee County Jail Administrator; DOES ) | |
| OZAUKEE COUNTY JAIL DEPUTIES 1-8; ) | |
| COUNTY OF OZAUKEE; KENNETH ) | |
| COPPES, PATRICK MURRAY, and ) | |
| MICHAEL BARR as Village of Round Lake ) | |
| Beach Police Officer; the VILLAGE OF ) | |
| ROUND LAKE BEACH; GARY BITLER as ) | |
| Round Lake Beach Police Chief; LAKE ) | |
| COUNTY; MARK CURRAN as Sheriff of ) | |
| Lake County; DOES LAKE COUNTY JAIL ) | |
| DEPUTIES SHERIFF 9-13, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Stephen Kubiatowski's motion for reconsideration of the Court's May 5, 2014 Order denying in part Kubiatowski's motion to dismiss based on absolute prosecutorial immunity. For the reasons set forth below, the Court denies Defendant's motion [101].

## I. Background

On October 10, 2010, *pro se* Plaintiff Julio Villars was arrested by police officers from the Village of Round Lake Beach, Illinois ("VRLB") for driving under the influence and fleeing from VRLB officers after they effectuated a traffic stop of Villars's vehicle. According to

Villars's Second Amended Complaint ("SAC"), after completing the booking procedures and signing the paperwork concerning his personal recognizance bond, VRLB – rather than releasing Villars on the bond – transported him to Lake County jail on an allegedly unconstitutional immigration detainer from U.S. Immigration and Customs Enforcement ("ICE"). Villars alleges that he remained there for a month until November 10, 2010, when he was taken to ICE's Chicago office and transferred to the FBI pursuant to a material witness warrant in *U.S. v. Diaz*, 10-cr-0199. The U.S. Marshals Service then took Villars into custody, before transferring him to Ozaukee County Jail in Port Washington, Wisconsin, where, Villars says, the U.S. Marshals rent bed space to hold federal material witness detainees.

The docket in *U.S. v. Diaz* reveals that Judge Castillo issued a material witness warrant for Villars on November 3, 2010, following a hearing on AUSA Kubiatowski's October 27 motion. See [54, 56]. In the affidavit attached to his motion, Kubiatowski represented to Judge Castillo that Villars's testimony in *U.S. v. Diaz* – a case in which Villars had posed as a buyer of methamphetamine at the direction of the FBI – was critical to the government's prosecution of defendant Jose Diaz and that Villars was facing imminent deportation proceedings. For that reason, Kubiatowski advised Judge Castillo that the government would be unable to secure Villars's presence at a potential trial with a subpoena and therefore needed a material witness warrant transferring Villars to the custody of the U.S. Marshals Service. See Kubiatowski Affidavit in *U.S. v. Diaz*, 10-cr-0199, [54-1]. According to Villars, sometime after Kubiatowski secured the material witness warrant, he "advised the Court that detention of Mr. Villars would be no longer then [sic] ten days, because the criminal defendants where [sic] entering a plea of guilt." SAC ¶ 185. At Villars's initial appearance on November 15 (the only time when Villars could have feasibly heard Kubiatowski make that representation to the Court), Magistrate Judge

Denlow appointed Paul Flynn from the Federal Defender Program as Villars's attorney "for [that] proceeding, only," and ordered that Villars remain in custody pending his detention hearing, which Judge Denlow scheduled for November 19. See [60].

Villars tested positive for tuberculosis when he returned to Ozaukee County Jail later that day. SAC ¶¶ 142-44. And when he refused to undergo any additional medical evaluation, he was placed in isolation. SAC ¶¶ 145-46. The docket in *U.S. v. Diaz* reports that on November 19, Judge Denlow cancelled Villars's scheduled detention hearing "due to medical illness as advised by U.S. Marshal" and that the "[c]ase [would] be reset at a later date." [65]. Villars, however, says that he received no information regarding his detention status or his next court date and had no contact with his attorney. SAC ¶¶ 155, 158-59. Finally, on December 30, 2012, after 50 days in Ozaukee County Jail, Villars wrote Judge Castillo a letter, explaining his situation and requesting a detention hearing. See Villars Letter to J. Castillo, SAC Ex. I. Around this time, Villars also undertook a two-day hunger strike in an attempt to force someone to provide him information regarding his detention, an effort that proved successful when jail deputies promised to personally deliver a letter from Villars to the U.S. Marshals Service and get him "the help he needed." SAC ¶¶ 162-65. Villars's allegations jibe with the fact that after November 19, 2010, the next docket entry in *U.S. v. Diaz* concerning Villars was entered on January 6, 2011, when Judge Denlow scheduled a status hearing "as to material witness Julio Villars-Salazar" for January 11, 2011. [67].

Villars also alleges that he wrote a letter to his attorney Paul Flynn on January 7, 2011, pleading for some type of assistance or information concerning his status. SAC Ex. J. According to the docket, Flynn withdrew as Villars's counsel at the January 11, 2011 status hearing and Ronald Clark was substituted for Flynn. See [69]; SAC ¶ 167. Judge Denlow set a

3

subsequent status hearing for January 13, at which time he scheduled yet another hearing for January 27 and ordered that Villars remain in custody until then. [68, 70]. On January 27, 2011, Judge Denlow conducted a detention hearing as to Villars and, according to the docket, Villars was released from custody "[b]y agreement of the parties." See [74]; SAC ¶ 172. Villars says that he was returned to Ozaukee County Jail after the hearing, and was then transported back to Chicago on February 1, 2011, where he was released from detention, 56 days after he was taken into custody under the warrant. SAC ¶¶ 175, 202.

Villars commenced this suit on June 13, 2012 and filed the twenty-one count SAC [54] at issue here on August 1, 2013. Villars alleges various Fourth Amendment and due process claims against VRLB police officers, Lake County, Ozaukee County, and Ozaukee County jail officials (essentially, anyone that had a hand in Villars's allegedly unconstitutional detention pursuant to his ICE detainer). Villars also sued AUSA Stephen Kubiatowski, in both his official and individual capacities. Count I of his *pro se* SAC alleges that Kubiatowski violated Villars's due process rights by detaining him longer than was necessary to secure his presence as a material witness at trial. Count II alleges that Kubiatowski violated Villars's due process rights by "adopting and implementing policies" that subjected Villars to "outrageous, excessive, cruel, inhuman, and degrading conditions of confinement." Count III alleges that Kubiatowski violated Villars's equal protection rights by (as in Count I) detaining Villars longer than was "necessary to secure his appearance in court" and (as in Count II) "subjecting him to harsh[er] treatment" than other "similarly-situated material witness[es]," because of his race, ethnicity, or national origin. Count IV alleges that Kubiatowski violated his Fourth Amendment right to be free from unreasonable detention and failed to comply with the material witness statute (18 U.S.C. § 3144), the Bail Reform Act (18 U.S.C. § 3142(f)(2)), and Federal Rule of Criminal Procedure 46(h).

At bottom, these four counts allege that Kubiatowski violated Villars's Fourth and Fourteenth Amendment rights when Kubiatowski caused Villars to be unlawfully detained by neglecting the prosecutorial duties prescribed by the material witness statute (18 U.S.C. § 3144), the bail reform act (18 U.S.C. § 3142), and Federal Rule of Criminal Procedure 46(h). SAC ¶¶ 240-41.[1]

Defendants filed motions to dismiss Villars's SAC, on which the Court ruled – dismissing some, but not all of Villars's claims – in a Memorandum Opinion and Order on May 5, 2014 [98]. In Kubiatowski's short motion to dismiss [84], he first argued for the dismissal of Villars's claims against him in his official capacity, an argument that the Court accepted (an official capacity suit is tantamount to a claim against the government itself) and on which the Court ruled in Kubiatowski's favor. But as to the actual merits of Villars's four counts against Kubiatowski in his individual capacity, he devoted a mere page-and-a-half to his argument for the dismissal of Villars's claims. His first page mostly cited to *Imbler v. Pachtman*, 424 U.S. 409 (1976), and *Fields v. Wharrie*, 672 F.3d 505 (7th Cir. 2012), for general propositions concerning the law of absolute prosecutorial immunity, such as that prosecutors are absolutely immune for activities that are "associated with the judicial phase of the criminal process," (424 U.S. at 430), and that absolute immunity "encompasses any action directly relevant to a prosecutor's ability to conduct a trial." 672 F.3d at 510. Kubiatowski next summed up his interpretation of Villars's allegations:

---

[1] Count XV of Villars's SAC alleges that Kubiatowski violated the Vienna Convention on Consular Relations by failing to inform Villars of his right to communicate with consular officials. As discussed in the Court's May 5, 2014 Memorandum Order and Opinion, the Seventh Circuit has held that there is a private constitutional-based right of action grounded in Article 36 of the Vienna Convention. Such a claim is proper when one who takes a foreign national into custody ignores Article 36's directive to inform the detainee of his right to contact his consulate, to have the fact of his detention reported to the consulate, and to communicate with the consular post. Kubiatowski did not move to dismiss Count XV, nor did he address Villars's Vienna Convention allegations in his motion for reconsideration. Thus, they are not at issue here.

> Here, Villars alleges that his detention as a material witness was improper under the applicable statute, that Kubiatowski purportedly failed to inform the court of Villars' arrest as a material witness, caused Villars to be detained as a material witness longer than was necessary, failed to provide the court with unspecified information regarding Villars' detention, and failed to inform the court of Villars' continued incarceration as a material witness "without bail or status hearing."

And then devoted (literally) just one sentence to his immunity argument as it pertains to the facts of this case. Citing *Daniels v. Keiser*, 586 F.2d 64 (7th Cir. 1978), he argued that:

> Kubiatowski's efforts to secure Villars' presence at trial through a court-issued arrest warrant and judicially-monitored detention as a material witness fall squarely within the judicial phase of the criminal process and were unquestionably relevant to Kubiatowski's role in conducting a trial.

Kubiatowski MTD at 5.

Villars's 32-page *pro se* opposition to Kubiatowski's motion is, as Kubiatowski notes in his reply brief, "jam-packed with case law citations and legal arguments," some of which arguably touch on factual scenarios not alleged in his SAC and thus have no real bearing on this case. For example, Villars devotes a sizable portion of his brief to his argument that Kubiatowski is not immune for *executing* the material witness warrant and *detaining* Villars, which are police functions, Villars argues. The Court sees no relationship between those arguments and the Kubiatowski-related claims in his SAC, which – in the Court's view – boil down to allegations that Kubiatowski improperly sought a material witness warrant and then caused him to be unlawfully confined without a statutorily-mandated detention hearing by failing to keep the court apprised of Villars's status as a material witness in violation of Fed. R. Crim. P. 46(h)(2). But among the relevant arguments that Villars made in his *pro se* opposition brief is that the Seventh Circuit's 1978 decision in *Daniels* does not sweep nearly as broadly as the Government suggests in its motion to dismiss. And he highlighted two much more recent cases

6

out of the Third Circuit that highlight the relevant factual differences between this case and *Daniels*.

In *Daniels*, the plaintiff sued an Assistant United States Attorney for allegedly lying to a federal judge in South Bend, Indiana to obtain a material witness warrant and secure the plaintiff's testimony at trial. 586 F.2d at 65-66. When the prosecutor realized that the U.S. Marshals had forgotten to subpoena Daniels (a key witness in a criminal case involving interstate auto theft) and that Daniels had flown to Bermuda for a business trip, the prosecutor sought a material witness warrant and falsely represented in his affidavit in support of the warrant that Daniels "was attempting to evade service of the subpoena," "had previously attempted to evade service of the subpoena," "had left town after having been notified by the United States Marshal's office that there was a subpoena for him," that Daniels's lawyer told the prosecutor that Daniels was "double-crossing" the prosecutor, and that the prosecutor "had no idea of when Mr. Daniels would return to the United States." *Id.* at 66. On that basis, the judge granted the material witness warrant, and the Marshals arrested Daniels at O'Hare in front of his wife, colleagues, and clients when he arrived back in Chicago just a few days later *Id.* The district court denied the AUSA's motion to dismiss Daniels's suit for violations of his constitutional rights, but the Seventh Circuit reversed, holding that the defendant prosecutor was entitled to absolute immunity. *Id.* at 66-68. "In seeking to guarantee Daniels' presence at the trial through the material witness warrant, defendant was attempting to prove all elements charged in the indictment" and thus "was not cast in the role of an administrator or investigative officer with respect to securing Daniels' attendance at [] trial," but was acting as an "advocate." *Id.* at 68. Nevertheless, the Court noted that, even in the midst of a trial, a prosecutor is not entitled to absolute immunity "[w]hen he is acting in an administrative or investigative capacity." *Id.* at 67

7

In a much more recent case, *Odd v. Malone*, 538 F.3d 202, 212 (3d Cir. 2008), the Third Circuit endorsed the holding in *Daniels*, just as other Circuits had in the past, (see *e.g., Betts v. Richard*, 726 F.2d 79, 81 (2d Cir 1984)), that a prosecutor is acting in his prosecutorial capacity when he secures a material witness warrant for a witness's arrest. But *Odd*,[2] unlike *Daniels* but like this case, involved allegations that after the prosecutors obtained the warrant, "they neglected to keep the courts informed of the progress of the criminal proceedings and the custodial status of the witnesses." *Odd*, 538 F.3d at 205. With respect to material witness Nicole Schneyder, the prosecutor who had obtained the warrant failed to update the judge when the trial was continued or inform him that Schneyder remained incarcerated during that time. *Id.* at 213. As a result, Schneyder sat in jail for 48 days after the continuance, until the judge finally was cued in and promptly released her. *Id.* at 206. Schneyder sued the DA's office and the individual ADA assigned to her case for violations of her Fourth and Fourteenth Amendment rights. *Id.* at 206. The district court granted the defendants' motion to dismiss on absolute prosecutorial immunity grounds, but the Third Circuit reversed, finding that the prosecutor's obligation to inform the Judge of the trial's continuance and the material witness's ongoing detention "was primarily administrative, especially in light of [the judge's] explicit order that he be advised of any delay in the [underlying] proceedings." *Id.* at 213.

Critical to the Third Circuit's analysis was Schneyder's allegation that "it was the custom and practice [in that county] to assign sole responsibility for tracking and monitoring detained witnesses to the District Attorney's Office and to individual prosecutors," a custom which the Court noted "is consistent with federal criminal practice." *Id.* at 214. The Court quoted Fed. R.

---

[2] *Odd* was a consolidated appeal concerning two cases with similar facts. One involved plaintiff Nicole Schneyder and the other was brought by plaintiff Korvel Odd, both of whom alleged that they were unlawfully detained for too long pursuant to a material witness warrant and sued the prosecutor who sought the warrant for failing to keep the court informed of her/his continued detention. 538 F.3d at 205.

8

Crim. P. 46(h)(2)'s mandate that "[a]n attorney for the government must report biweekly to the court, listing each material witness held in custody for more than 10 days pending indictment, arraignment, or trial. For each material witness listed in the report, an attorney for the government must state why the witness should not be released with or without a deposition being taken under Rule 15(a)." *Id.* The Third Circuit then explicitly said that "[t]he gist of the provision – the biweekly reporting requirement – is plainly administrative," noting that "the prosecutor is required to 'list' all detained witnesses, not to advocate any particular action with regard to those witnesses." *Id.* Moreover, the Third Circuit explained that "Rule 46(h), which is intended to 'eliminate unnecessary detention,' suggests that *10 days* is the upper limit for holding material witnesses without notice to the court and a written justification for 'why the witness should not be released.'" *Id.* (emphasis in original). With respect to Schneyder, the Third Circuit said, the prosecutor's violation of the judge's order, akin to Rule 46(h), caused her "to be held for over *50 days* without notice to the court or a justification of any kind from [the prosecutor]." *Id.* (emphasis in original). In the end, the Third Circuit held that the prosecutor's "failure to notify the court about Schneyder's custodial status was an administrative oversight" for which she was not entitled to absolute prosecutorial immunity. *Id.*

In his reply brief, Kubiatowski attempts to distinguish Villars from Schneyder by arguing that "unlike in *Odd*, there is no allegation that Kubiatowski violated an order to provide the court with specific information material to Villars' detention." Kubiatowski Reply Br. at 9. And, in a footnote, Kubiatowski argues – though he cites no authority in support of the proposition – that Rule 46(h)(2) imposed no obligation whatsoever on Kubiatowski. *Id.* at 7 n.5. Instead, he argues, that Rule 46(h)(2) merely requires "an attorney for the government" to file a biweekly report to the court listing all material witnesses. "This rule may create a general obligation of the

9

government," "but plainly did not impose an individual obligation on Kubiatowski," he argues *Id.* at 8 n.5.

Unpersuaded in light of (1) the factual similarities between Villars's allegations and those of plaintiff Schneyder in *Odd* and (2) the explicit statement by the Third Circuit that a prosecutor's failure to observe Rule 46(h)(2)'s biweekly reporting requirement is "plainly administrative" for purposes of absolute prosecutorial immunity, the Court denied Kubiatowski's motion to dismiss with respect to Villars's Rule 46(h)(2) claim. However, the Court granted Kubiatowski's motion to dismiss Villars's claims "to the extent that Villars seeks to hold Kubiatowski liable for misrepresentations that Kubiatowski allegedly made to Judges Castillo and/or Denlow to secure Villars's detention," in light of the holding in *Daniels* that such actions qualify as "advocacy" and are thus entitled to absolute immunity. See [98] at 25. Kubiatowski now moves the Court to reconsider its ruling on the Rule 46(h)(2) issue.

## II. Motion for Reconsideration Legal Standard

Kubiatowski's motion is governed by Federal Rule of Civil Procedure 54(b):

> any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b). Accordingly, under Rule 54(b), the Court may exercise its inherent authority to reconsider its interlocutory orders. See *Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 12 (1983) ("every order short of a final decree is subject to reopening at the discretion of the district judge"); *Sims v. EGA Prods., Inc.,* 475 F.3d 865, 870 (7th Cir. 2007) ("nonfinal orders are generally modifiable").

It is well established, however, that "[m]otions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Conditioned Ocular Enhancement, Inc. v. Bonaventura*, 458 F. Supp. 2d 704, 707 (N.D. Ill. 2006) (quoting *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.,* 90 F.3d 1264, 1269 (7th Cir. 1996)). In regard to the "manifest error" prong, the Seventh Circuit has explained that a motion to reconsider is proper only when "the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990); see also *Wiegel v. Stork Craft Mfg., Inc.,* 2012 WL 2130910, at *2 (N.D. Ill. June 6, 2012) ("Reconsideration is not appropriate where a party seeks to raise arguments that could have been raised in the original briefing."); *Oto v. Metropolitan Life Ins. Co.,* 224 F.3d 601, 606 (7th Cir. 2000) ("A 'manifest error' is not demonstrated by the disappointment of the losing party," instead it "is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'"); *Bilek v. American Home Mortg. Servicing,* 2010 WL 3306912, at *1 (N.D. Ill. Aug. 19, 2010). And with respect to the second prong, the court of appeals has explained that a motion to reconsider may be appropriate if there has been "a controlling or significant change in the law or facts since the submission of the issue to the Court." *Bank of Waunakee*, 906 F.2d at 1191. Because the standards for reconsideration are exacting, our court of appeals has stressed that issues appropriate for reconsideration "rarely arise and the motion to reconsider should be equally rare." *Bank of Waunakee*, 906 F.2d at 1191.

**III. Analysis**

In his motion for reconsideration, Kubiatowski makes two arguments. First, he contends that Rule 46(h)(2), by its terms, "imposes a *general* obligation on the United States to submit a

report to the district court regarding all material witnesses subject to the rule's reporting requirements, not an individual obligation on individual AUSAs to submit such reports in every separate case in which such an issue arises." Second, he argues that "even if Rule 46(h)(2) is read to impose an individual obligation on prosecutors like AUSA Kubiatowski, the court filing required by this rule require [sic] advocacy (*i.e.,* legal argument justifying the continued detention of material witnesses) which falls squarely within the types of prosecutorial activity for which prosecutors receive absolute immunity." The first argument was raised in his reply brief, the second argument misses the mark, and both were squarely addressed by the Third Circuit in *Odd*.

Kubiatowski's claim that Rule 46(h)(2) imposed no obligation on him is unpersuasive for several reasons. First, common sense dictates that the AUSA assigned to a particular case, who sought and obtained the material witness warrant, is best positioned to keep the judge apprised of the status of the material witnesses incarcerated pending trial. After all, he is the one who best knows if the witness's testimony is still needed. True, the Rule mandates that "*an* attorney" for the government make the report, but of course, *the* attorney on whom this responsibility starts with and ultimately rests is the one prosecuting the case. The Advisory Committee Notes for Rule 46(h)(2) support this reading, making reference to the report "by *the* attorney for the government." To the extent that the rule is ambiguous, that ambiguity does not cut in favor of Kubiatowski.

Second, Villars alleges that both Rule 46 *and* (like Schneyder) "prevailing custom and practice[]" imposed this duty on Kubiatowski. SAC ¶¶ 197-201, 240-243. As just explained, a plain reading of the Rule does not belie his claim, nor has (or could) Kubiatowski establish a contrary custom or practice at this early stage of the case. And even if it were accurate to say

that the Rule merely creates a "general obligation of the government to provide a single, comprehensive report to the district court," that obligation would naturally start with the AUSA who obtained the material witness warrant and is prosecuting the case. Kubiatowski's motion for reconsideration suggests that he took no action whatsoever with respect to Rule 46(h)(2); his argument is not, for example, that he provided the necessary information to the government attorney in his office who *was* responsible for the filing the report, and thus fulfilled his individual obligation. Instead, he argues that the Rule "did not impose an individual obligation on" him, period. That cannot be, because that interpretation would eviscerate the rule and render the reporting requirement optional.

Finally, the Third Circuit, which seems to be the only federal court of appeals to have interpreted Rule 46(h)(2), repeatedly described the rule as requiring "the" prosecutor to file the report. See *Odd*, 538 F.3d at 214. In comparing "the" federal prosecutor tasked with biweekly reporting pursuant to 46(h)(2) to "the" ADA who failed to report Schneyder's continued incarceration, the Third Circuit made clear (to the extent that it wasn't already) that it is the attorney who is prosecuting the case on whom the Rule imposes a reporting obligation. In addition, the Third Circuit emphasized Schneyder's allegation that the prosecuting attorney was required "by local custom" (in addition to the judge's express order) to track and monitor her status as a material witness and keep the court apprised. *Id.* at 212, 214. Villars makes that same allegation in this case. Ultimately, discovery may show that compliance with Rule 46(h)(2)'s biweekly reporting requirement did not fall on Kubiatowski in Villars's case, and he may prevail on this argument at summary judgment. But for purposes of his motion to dismiss, where Plaintiff's well-pled allegations are accepted as true and all reasonable inferences are drawn in

13

Villars's favor, Kubiatowski has not met his burden of persuading the Court that Rule 46(h)(2) imposed no obligation on him whatsoever.

Kubiatowski's second argument, that Rule 46(h)(2) "involves advocacy," appears to be contradicted by his first argument. If the obligation to report Villars's name to the district court on a comprehensive list fell to someone else, and Kubiatowski had no obligation under Rule 46(h)(2) to communicate with that person, the report could not possibly include any advocacy, since the advocate on Villars's case would have had no hand in it. By definition, the report would be administrative – at most, it could include some practical "reason" for "why the witness should not be released" (*e.g.,* "for trial" or "tuberculosis") that cannot reasonably be characterized as "advocacy" if that reason is reported by someone without intimate familiarity of the case and its strategy.

But, even accepting Kubiatowski's interpretation of the Rule as correct, *Odd* still compels the Court to deny his motion. The Third Circuit unequivocally stated that "[t]he gist of the provision – the biweekly reporting requirement – is plainly administrative" because "[t]he prosecutor is required to 'list' all detained witnesses, not to advocate any particular action with regard to those witnesses." *Odd*, 538 F.3d at 214. This suggests that Kubiatowski cannot claim that his act was "advocacy," because that's the whole point – he didn't advocate. He never filed the report.[3] Kubiatowski overlooks that portion of the Third Circuit's opinion, and instead focuses on the fact that the prosecutor in *Odd* was not tasked by the judge with advocating a

---

[3] Policy justifications support the Third Circuit's rationale, as well. Absolute prosecutorial immunity is grounded in the notion that prosecutors cannot adequately do their job if they are motivated by a fear of retaliatory lawsuits, and that the public trust in the prosecutor would suffer if the prosecutor "shade[ed] his decisions instead of exercising the independence required by" that trust. *Van de Kamp v. Goldstein*, 129 U.S. 855, 859-60 (2009). None of those freedom-of-discretion-type concerns are implicated by holding a prosecutor liable for a failure to comply with a judge's order or a Rule requiring the filing of a report. If anything, doing so serves to align the interests of the public and the prosecutor and disincentivizes administrative oversights of the kind in *Odd* and, taking Villars's allegations as true, here.

reason for Schneyder's detention (just with keeping him informed, the equivalent to 46(h)(2)'s biweekly reporting requirement) and argues, on that basis, that Villars's case is different. But the Third Circuit, when it reconsidered the absolute immunity issue at summary judgment in *Schneyder v. Smith*, 653 F.3d 313, 326 n.18 (3d Cir. 2011), clarified that the *Constitution*, not the judge's order, was the basis of the prosecutor's duty to Schneyder, and so the scope of the judge's order was irrelevant for Fourth Amendment purposes.

In reaffirming *Odd*, the Third Circuit emphasized that the prosecutor's failure to advise the judge of Schneyder's status was "neither discretionary nor advocative, but . . . instead . . . purely administrative" and thus not protected by absolute immunity. *Schneyder v. Smith*, 653 F.3d 313, 332 (3d Cir. 2011). And the Third Circuit is not an outlier in this arena; both the Second and Sixth Circuits have cited *Odd* and implicitly endorsed its Rule 46(h)(2) analysis. See *Flagler v. Trainor*, 663 F.3d 543, 549 n.11 (2d Cir. 2011) (distinguishing the facts at issue from the facts of *Odd*, which "held that keeping the court informed about the status of a criminal proceeding (which could affect a material witness's continued detention) was an administrative task"); *Adams v. Hanson*, 656 F.3d 397, 404 (6th Cir. 2011) (recognizing *Odd*, where the incarcerations at issue "were prolonged past the intention of the court due to prosecutorial oversight," as good law and distinguishing its facts from the case before it).

Kubiatowski argues that "there is no principled distinction to be made between the kind of statement required by Rule 46(h)(2) and the statements Kubiatowski made in the affidavit he submitted in support of the application to detain Villars as a material witness." Kubiatowski Mot. to Reconsider. at 5. But Kubiatowski misses the Third Circuit's point that Rule 46(h)(2) contains both an administrative component (filing a report) and an advocative component (it should include a reason for continued detention). See *Odd*, 538 F.3d at 214 n.7 (noting that the

15

second part of Rule 46(h)(2) is "plainly advocative, requiring prosecutors who wish to keep witnesses detained to 'state why the witness[es] should not be released'"). A prosecutor engages in no advocacy when he ignores Rule 46(h)(2), because he does nothing at all. Likewise, if Kubiatowski had filed a report, listing the detained material witnesses in the case, but forgot to include Villars's name, Kubiatowski could not now argue that this administrative oversight was "advocacy." The Third Circuit suggests that if the ADA *had* reported the trial's continuance to the judge and, in response to the judge's inclination to release Schneyder, made arguments in support of her continued incarceration, the ADA would be absolutely immune for those advocative statements by the *Daniels* rationale. But at the same time, had the ADA informed the judge and made those arguments, there would have been no suit for Schneyder to file because there would have been no administrative oversight in the first place. The same is true here. Had Kubiatowski filed the report and, in it, misrepresented his reason why Villars should be further detained, the Third Circuit suggests that Kubiatowski would be absolutely immune for that misstatement and, having remembered to file the report, would have made no administrative errors.

Despite the Third Circuit's footnote noting the "advocative" nature of the second part of the Rule (which, unlike the opinion's extensive consideration of the Rule's administrative nature, contained no analysis, since that issue had no bearing on the case), the Court is not so sure that these reports *do* contain advocacy, at least in the Northern District of Illinois. Rule 46(a)(2) requires an attorney for the government "to state why a witness should not be released." That may, in practice, be advocacy; but it may not be. If, as Kubiatowski suggests, the report is compiled by someone without knowledge of his prosecution, trial strategy, and need for the witness's testimony, these biweekly reports may well not contain advocacy at all and likely state

an administrative reason for the witness's detention (such as, "trial before Judge Dow," or "witness has tuberculosis"). The reality is – and this is the crux of the Court's denial of Kubiatowski's motion to dismiss in the first place – discovery is needed to flesh this out. Discovery will demonstrate, in the way that Kubiatowski has failed to (and perhaps cannot) do at the motion to dismiss stage of the case, exactly what a typical Rule 46(h)(2) report looks like; who within his office typically files it (a secretary? the prosecuting attorney?); with whom it is typically filed (the presiding judge? the chief judge? a court administrator?); whether these reports are typically placed on the court's docket; what information these reports contain; what internal guidance Kubiatowski's office may have received from the Department of Justice interpreting the Rule; what information Kubiatowski's 46(h)(2) reports have contained in other cases; and whether Kubiatowski, in fact, failed to file a report at all (an affirmative defense that would moot this entire exercise).

At the end of the day, it is Kubiatowski's burden to demonstrate his entitlement to absolute prosecutorial immunity, and he has not done so at this early stage of the litigation. In his motion to dismiss, Kubiatowski essentially made a one-sentence argument and cited to a single case (*Daniels*) for a proposition with which the Court agreed: that he is immune for his actions in *seeking* the material witness warrant. However, only one court of appeals has spoken to the precise Rule 46(h)(2) issue before the Court, and that case – which recognizes and distinguishes *Daniels* – dictates that, at least at this stage of the litigation, Kubiatowski is not entitled to immunity for one of the allegations that Villars makes. Indeed, Kubiatowski concedes, albeit in an attempt to put the onus on Judge Denlow and/or to seek the protection of "quasi-judicial immunity" (an argument that *Odd* explicitly rejected (538 F.3d at 214)), that "arguably neither the court nor the U.S. Attorney's office complied with [Rule 46] literally."

Kubiatowski Mot. for Reconsider. at p. 5. Discovery may belie Villars's allegations in any number of ways, but at present, the Court must accept all of his well-pled allegations as true, draw all reasonable inferences in his favor, and – in the absence of a compelling justification to do otherwise – will follow the clear guidance from the federal court of appeals that has thoughtfully and persuasively ruled on this issue.

**IV. Conclusion**

For the reasons stated, Kubiatowski's motion for reconsideration [101] is denied.

Dated: July 16, 2014

_____
Robert M. Dow, Jr.
United States District Judge