# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| JULIO VILLARS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 12-cv-4586 |
| STEPHEN KUBIATOWSKI, MORRIS | ) | |
| PASQUAL, STEPHEN LEE, WILLIAM | ) | |
| ROECKER, DEA SPECIAL AGENT | ) | Judge Robert M. Dow, Jr. |
| ROBERT BELLA, in their individual and | ) | |
| official capacities, FEDERAL BUREAU | ) | |
| OF INVESTIGATION, DRUG | ) | |
| ENFORCEMENT ADMINISTRATION, | ) | |
| UNITED STATES ATTORNEY'S | ) | |
| OFFICE FOR THE NORTHERN | ) | |
| DISTRICT OF ILLINOIS, | ) | |
| DEPARTMENT OF JUSTICE, and | ) | |
| UNITED STATES, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings claims in his Sixth Amended Complaint against various federal employees and agencies: Stephen Kubiatowski ("Kubiatowski"); Morris Pasqual ("Pasqual"); Stephen Lee ("Lee"); William Roecker ("Roecker"); Robert Bella ("Bella"); the Federal Bureau of Investigation ("FBI"); the Drug Enforcement Administration ("DEA"); the United States Attorney's Office for the Northern District of Illinois ("USAO"), the Department of Justice ("DOJ"), and the United States (collectively, the "Federal Defendants"). This matter is before the Court on the motion [197] to dismiss Counts I, II, III, IV, and V of the Sixth Amended Complaint filed by the Federal Defendants.[1] Plaintiff opposes the motion [202]. For the

---

[1] Plaintiff also brings claims against Ozaukee County; Maury Straub; Jeffrey Sauer; Scott Smith; Eric Sager; Stan Griffin; Brad Kittinger; Charles Frechette; Richard Seidemann; Brian McInnis; and Cory Jepson (collectively, the "Ozaukee County Defendants"). The Ozaukee County Defendants filed an

following reasons, the Federal Defendants' motion [197] is granted. Counts I, II, III, IV, and V are dismissed as to Defendants Pasqual, Lee, Roecker, Bella, FBI, DEA, USAO, DOJ, and United States. Plaintiff may proceed with Count I and Count II as they relate to Kubiatowski's alleged failure to comply with Federal Rule of Criminal Procedure 46(h)(2) only and are otherwise dismissed. Counts III and IV are dismissed as to Kubiatowski. This case is set for further status hearing on October 11, 2017 at 10:15 a.m.

## I.    Factual Background[2]

Plaintiff Julio Villars ("Plaintiff") is a citizen of Honduras who has resided in the United States since 1995. [175] ¶¶ 34, 72. The federal government granted Plaintiff deferred action on his immigration status in 2008 based on his work as a Confidential Human Source ("CHS") for the FBI, the DEA, and the USAO. *Id.* ¶ 35, Ex. A. Plaintiff agreed to work as a CHS for these agencies based on promises of safety that were provided to him, as well as promises of a Green Card. *Id.* ¶¶ 37, 54, 105. Defendant Roecker, an FBI Special Agent, assured Plaintiff that his identity as a CHS would not be disclosed, and that if he became endangered he would receive a new identity and be relocated at the federal government's expense. *Id.* ¶¶ 50, 55–56. Plaintiff also alleges that he was threatened with deportation or non-renewal of his deferred action if he ceased his work as a CHS. *Id.* ¶ 36.

As a CHS, Plaintiff worked on several cases, including *United States v. Diaz, et al.*, No. 10-cr-199 ("*Diaz*"). On March 11, 2010, Plaintiff participated in a controlled transaction

---

answer [178] to the Sixth Amended Complaint on June 20, 2016 and are not parties to the pending motion [197] to dismiss filed by the Federal Defendants.

[2] For purposes of the motion to dismiss, the Court accepts as true all of Plaintiff's well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). Because Plaintiff is proceeding *pro se*, his pleadings will not be held to the same stringent standard as those drafted by trained lawyers. *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 811 (7th Cir. 2017).

involving one pound of methamphetamine that led to the arrest of the defendants in the *Diaz* case. [175] ¶ 40. On October 27, 2010, the USAO filed a motion for a material witness warrant pursuant to 18 U.S.C. § 3144 requesting that a material witness warrant be issued for Plaintiff. *Id.* ¶ 44. See also Case No. 10-cr-199, docket entry [54]. The motion was accompanied by a sworn affidavit from Kubiatowski, who at the time was an Assistant U.S. Attorney for the Northern District of Illinois. [175] ¶ 44. Kubiatowski identified Plaintiff by name as a cooperating source in the *Diaz* case. *Id.* ¶ 58. Kubiatowski also represented that Plaintiff's testimony was "critical" to the government's case, and that it was necessary to detain Plaintiff on a material witness warrant because Plaintiff was facing imminent deportation proceedings and would be outside the court's jurisdiction by the time *United States v. Diaz* was tried. *Id.* ¶ 46.

Plaintiff asserts that Defendants Kubiatowski and Roecker met with Defendants Pasqual (a supervisory Assistant U.S. Attorney for the Northern District of Illinois), Lee (an Assistant U.S. Attorney for the Northern District of Illinois), and Bella (a DEA Special Agent) and agreed to seek this material witness warrant. *Id.* ¶¶ 53, 58, 75. Bella initially came up with the idea of seeking a material witness warrant for Plaintiff, and Pasqual approved the release of Plaintiff's name in the accompanying affidavit. *Id.* ¶¶ 60, 62. Roecker assisted Kubiatowski in preparing this affidavit. *Id.* ¶ 45. Plaintiff further alleges that the USAO has a policy, custom or practice of gratuitously disclosing the names of confidential informants in order to pressure defendants into plea agreements. *Id.* ¶ 59.

On November 3, 2010, Judge Castillo issued a material witness arrest warrant for Plaintiff. [175] ¶ 48. On November 10, 2010, Defendant Roecker arrested Plaintiff as a material witness. *Id.* ¶ 49. Plaintiff was taken into custody and transported to Ozaukee County Jail in Port Washington, Wisconsin. *Id.* ¶ 106. While there, Plaintiff alleges that he was subject to

unconstitutional treatment, including the requirement that he undergo strip searches and the denial of his access to the law library. *Id.* ¶¶ 106–44. Plaintiff was released from custody on February 1, 2011. *Id.* ¶ 139.[3]

According to Plaintiff, the Federal Defendants' actions in publicly releasing his CHS status have exposed Plaintiff to the risk of harm or death by drug trafficking organizations in the United States and if he is returned to Honduras. [175] ¶¶ 72, 74. Plaintiff alleges that he has received retaliatory threats and harassment since his name was released: Plaintiff informed the court and Kubiatowski about threats made against him on January 11, 2011, but no effort was made to follow up and investigate these threats. *Id.* ¶¶ 80–81. On November 17, 2011, Plaintiff was called a "sapo," meaning snitch or rat, on social media and warned that others were aware of his CHS status. *Id.* ¶ 97, Ex. G. Furthermore, in October 2015, Plaintiff was advised by family members to avoid coming to Chicago, especially near their houses, because they were being watched by associates of drug traffickers. *Id.* ¶ 86. Plaintiff relocated himself in October 2015 and has been required to move continuously since then to avoid being located by drug traffickers. *Id.* ¶¶ 95–96. Plaintiff recently sought assistance from Roecker, the FBI, and the DEA, but he was told that they would not get involved due to the pending litigation against them. *Id.* ¶¶ 87–94. Plaintiff alleges that he has suffered severe and lasting emotional and mental distress and lost past and future income as a result of the Federal Defendants' actions. *Id.* ¶¶ 79, 104. Plaintiff also claims that he was promised a non-deportation agreement to induce his cooperation, but government officials have instead denied him protection and barred his attempts to receive relief from deportation. *Id.* ¶¶ 103–05.

---

[3] Plaintiff's Sixth Amended Complaint lists that date of his release as February 1, 2010, but that must be a typo based on the full timeline of events that he sets out.

Plaintiff filed a *pro se* complaint [14] on June 13, 2012, asserting claims related to his arrest as a material witness and the conditions of his detention in Ozaukee County Jail. These claims were brought against various federal and state government defendants. Shortly thereafter, the Court recruited counsel for Plaintiff [see 12]. In April 2013, counsel moved to withdraw, having opined that Plaintiff's claims were not warranted under existing law or under a good faith extension of the law [see 3]. The Court granted counsel's motion [see 13] and allowed Plaintiff to proceed *pro se*. Plaintiff has capably represented himself since that time.

On May 17, 2013, Plaintiff filed an amended complaint [17] with leave of the Court. The amended complaint eliminated all of the federal government defendants except Kubiatowski. Summonses were issued to the Defendants named in the amended complaint. See [18]. On August 13, 2013, Plaintiff filed a second amended complaint [54], which Kubiatowski moved to dismiss. See [83]. On May 5, 2014, the Court granted the motion in part and dismissed all claims against Kubiatowski in his official capacity and all claims against Kubiatowski to the extent that they seek to hold him liable for misrepresentations he allegedly made to Judges Castillo and/or Denlow to secure Plaintiff's detention. See [98] at 23–27. Plaintiff subsequently entered into settlements with certain state defendants. See [120], [121], [122], [123] (stipulations of dismissal and minute orders dismissing defendants). On January 3, 2014, Plaintiff filed a motion [87] for leave to file a third amended complaint, which was denied [90].

On January 6, 2015, Plaintiff filed a motion [132] for leave to file a proposed fourth amendment complaint. The proposed fourth amended complaint named Kubiatowski as the only federal defendant, along with Ozaukee County Jail and associated state-level individuals. On September 2, 2015, the Court granted in part and denied in part Plaintiff's motion. See [144].

The Court also granted Plaintiff leave to file another motion for leave to file an amended complaint.

Plaintiff then filed a motion [151] for leave to file a fifth amended complaint and a motion [156] for leave to file a supplemental complaint and request for declaratory and injunctive relief or, in the alternative, a sixth amended complaint. Plaintiff's motion [156] for leave to file a supplemental complaint proposed to add additional federal defendants including Roecker, Lee, Bella, Pasqual, the U.S. Attorney General in her official capacity, the DEA, the FBI, and the DOJ. It also proposed to add additional claims against Kubiatowski. The Federal Defendants opposed this motion. Kubiatowski additionally filed a motion [149] to strike Counts I, II, III, and IV of Plaintiff's Fourth Amended Complaint.

On April 29, 2016, the Court granted in part and denied in part Defendant Kubiatowski's motion to strike portions of the fourth amended complaint, denied Plaintiff's motion for leave to file a fifth amended complaint, and granted in part and denied in part Plaintiff's motion for leave to file a supplemental complaint and request for declaratory and injunctive relief [172]. Regarding Kubiatowski's motion to strike, Plaintiff was allowed to move forward with his Fourth Amendment and Fifth Amendment claims against Kubiatowski only to the extent that those claims are based on Kubiatowski's alleged failure to comply with Federal Rule of Criminal Procedure 46(h)(2). Regarding Plaintiff's motion for leave to file a supplemental complaint and request for declaratory and injunctive relief, the Court allowed Plaintiff to add Defendants Roecker, Lee, Bella, Pasqual, the DEA, the FBI, and the DOJ. See [172]. See also [180] (striking the Attorney General in her official capacity from the Sixth Amended Complaint). Plaintiff was also allowed to add a state-created danger claim against Kubiatowski (as well as the

newly-added Federal Defendants). See [172] at 18–20. Plaintiff was further allowed to seek relief other than money damages from the United States. [172] at 22–23.

Plaintiff thereafter filed his Sixth Amended Complaint [175] on June 3, 2016. The Sixth Amended Complaint brings the following claims. First, Plaintiff alleges as to the Federal Defendants that his arrest and detention violated the Fourth Amendment because of the conditions of his detention, the unlawful searches Plaintiff was subjected to while detained, Kubiatowski's alleged violations of Federal Rule of Criminal Procedure 46(h)(2), and the unconstitutional application of the Material Witness Statute to Plaintiff (Count I). Second, Plaintiff alleges as to the Federal Defendants that his arrest and detention violated the substantive and procedural components of the Fifth Amendment's Due Process Clause because of the conditions of Plaintiff's detention, because there was no individualized assessment as to Plaintiff's detention, and because of Kubiatowski's alleged violations of Federal Rule of Criminal Procedure 46(h)(2) (Count II). Third, Plaintiff alleges as to the Federal Defendants that his arrest and public identification as a confidential informant constituted a state-created danger in violation of the Fifth Amendment's Due Process Clause (Count III). Fourth, as to Kubiatowski, Roecker, Lee, Pasqual, and Bella, Plaintiff alleges that his arrest violated the equal protection component of the Fifth Amendment's Due Process Clause (Count IV). Fifth, as to the FBI, DEA, USAO, DOJ, and United States, Plaintiff alleges that his arrest and detention was an unlawful exercise of agency authority (Count V). Finally, Plaintiff brings several claims against the Osaukee County Defendants: a Fourth Amendment claim (Count VI); a Section 1983 claim for denial of access to courts (Count VII); and Eighth and Fourteenth Amendment claims (Count VIII). Plaintiff requests compensatory and punitive damages and declaratory and injunctive relief. Plaintiff also alleges that the statute of limitations should be tolled: (1) because

defendants have a fiduciary duty to Plaintiff, including the duty to disclose; (2) by the doctrine of equitable estoppel; and/or (3) by the discovery rule. See [175] at 34.

Currently before the Court is the Federal Defendants' motion [198] to dismiss the claims against them in the Sixth Amended Complaint.

## II.     Legal Standard

To survive a Federal Rule of Civil Procedure ("Rule") 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (alteration in original). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly,* 550 U.S. at 558. In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts as true all of Plaintiff's well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). The Court reads the complaint and assesses its plausibility as a whole. See *Atkins v. City of Chi.*, 631 F.3d 823, 832 (7th Cir. 2011). Pleadings filed by *pro se* litigants must be "liberally construe[d]" and are not held to the same stringent

pleading standards as those filed by trained lawyers. *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 811 (7th Cir. 2017).

## III.    Analysis

### A.    Claims Against Defendants Pasqual, Lee, Roecker, and Bella

Plaintiff brings Counts I, II, III, and IV against the newly-added individual Federal Defendants (Pasqual, Lee, Roecker, and Bella). These defendants move to dismiss the claims against them on several grounds. First, they argue that the claims against them are barred by the applicable statutes of limitations. [198] at 3–4. Second, they argue that these are improper official capacity claims. [198] at 4–5. Third, they argue that to the extent Plaintiff is seeking relief against them under the Declaratory Judgment Act, Plaintiff has not sufficiently alleged the required elements for injunctive relief and any *Bivens* relief he could obtain would be more than adequate to compensate him. [198] at 5–7. Fourth, they argue that all of the individual Federal Defendants are absolutely immune from these claims. [198] at 7–9. Fifth, they argue that Plaintiff has not adequately pled a state-created danger claim. [198] at 9–12. Sixth, they argue that Plaintiff has not adequately pled an equal protection claim. [198] at 12–13. Finally, they argue that, to the extent Counts I and II remain viable based on alleged violations of Federal Rule of Criminal Procedure 46(h)(2), these claims must be dismissed against Bella, Roecker, the DEA, and the FBI because that rule only applies to attorneys. [198] at 13.[4]

### 1.    Statute of Limitations

Defendants Pasqual, Lee, Roecker, and Bella argue that the claims against them are barred by the relevant statute of limitations. While a statute of limitations defense ordinarily is not addressed in a Rule 12(b)(6) motion, it is appropriately raised where "the allegations of the

---

[4] These defendants also state that they move to dismiss Count V against them, [198] at 19, but this claim appears only to have been brought against the FBI, DEA, USAO, DOJ, and United States, not the individual Federal Defendants.

complaint itself set forth everything necessary to satisfy the affirmative defense, such as when a complaint plainly reveals that an action is untimely under the governing statute of limitations." *Andonissamy v. Hewlett–Packard Co.*, 547 F.3d 841, 847 (7th Cir. 2008) (citing *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005)). See also *Tregenza v. Great Am. Commc'ns Co.*, 12 F.3d 717, 718 (7th Cir. 1993) ("[A] plaintiff is not required to negate an affirmative defense in his complaint * * * [but] if he pleads facts that show that his suit is time-barred or otherwise without merit, he has pleaded himself out of court.").

Plaintiff seeks damages and declaratory and injunctive relief against Pasqual, Lee, Roecker, and Bella under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). As a preliminary matter, Plaintiff states that Lee, Pasqual, Roecker, and Bella are named as defendants in both their official and individual capacities in the Sixth Amended Complaint. [175] ¶¶ 9–15. But *Bivens* does not authorize claims against federal officers in their official capacities, because that would amount to a claim against the government itself. *Guzman v. Sheahan*, 495 F.3d 852, 859 (7th Cir. 2007). See also *F.D.I.C. v. Meyer*, 510 U.S. 471, 485 (1994) ("[W]e implied a cause of action against federal officials in *Bivens* in part *because* a direct action against the Government was not available * * * the purpose of *Bivens* is to deter *the officer*") (emphasis in original). Therefore, to the extent that Plaintiff brings these claims against Defendants in their official capacities, they are dismissed, and the Court considers Plaintiff's *Bivens* claims against Lee, Pasqual, Roecker, and Bella in their individual capacities only.

The applicable statute of limitations period for personal injury suits in the state where the alleged injury occurred governs the limitations period in *Bivens* actions. *Khan v. United States*, 808 F.3d 1169, 1174 (7th Cir. 2015); *Malone v. Corrs. Corp. of Am.*, 553 F.3d 540, 542 (7th Cir.

2009); *Delgado-Brunet v. Clark*, 93 F.3d 339, 342 (7th Cir. 1996). Plaintiff's alleged injuries—being induced to serve as a CHS, arrested pursuant to a material witness warrant, and publicly identified as a CHS—occurred in Illinois. In Illinois, the limitations period is two years. 735 ILCS 5/13-202; *Delgado-Brunet*, 93 F.3d at 342. See also *Porter v. U.S. Gen. Servs. Admin.*, 151 F.3d 1033, 1033 (7th Cir. 1998) ("We have long held that the proper statute of limitations for federal civil rights actions arising out of events in Illinois is two years.").[5]

Federal law defines the accrual of a *Bivens* claim. *Perkins–Alexander v. Sanchez*, 16 F. App'x 484, 486 (7th Cir 2001); *Leavell v. Kieffer*, 189 F.3d 492, 495 (7th Cir. 1999). "Under federal law, the time begins to run when the plaintiff knows that he has been injured." *Leavell*, 189 F.3d at 495. Plaintiff alleges in the Sixth Amended Complaint that (1) he was publicly identified in the *Diaz* case on October 27, 2010, [175] ¶ 58; (2) he was detained pursuant to the material witness warrant on November 10, 2010, [175] ¶ 49; and (3) he became aware of retaliatory threats made against him no later than January 11, 2011 when his attorney advised the court about such threats, [175] ¶ 80. On all of those dates, Plaintiff knew of his injuries, including his arrest, his detention, and the retaliatory threats made against him after his identity as a CHS was publicly disclosed. Therefore, Plaintiff's claims accrued, at the latest, on January

---

[5] The Federal Defendants state that if Wisconsin's statute of limitations were to apply based on the location of Plaintiff's detention, then the limitations period would be three years. See [198] at 3 (citing Wis. Stat. § 893.54). But the Wisconsin limitations period for *Bivens* suits is six years. See *Gray v. Lacke*, 885 F.2d 399, 408–09 (7th Cir. 1989) (holding that Wisconsin's six-year personal rights statute of limitations (Wis. Stat. § 893.53) applied to Section 1983 claims rather than Wisconsin's three-year personal injury statute of limitations (Wis. Stat. § 893.54)); *Khan*, 808 F.3d at 1174 (applying the same six-year statute of limitations to a *Bivens* claim). See also *Peters v. Lynch*, 2015 WL 6872425, at *3 (E.D. Wis. Nov. 9, 2015) (applying six-year limitations period to *Bivens* action arising in Wisconsin); *Belton v. United States*, 2008 WL 2273272, at *9 (E.D. Wis. June 2, 2008) (applying six-year limitations period to *Bivens* action). The alleged conduct that forms the basis of Plaintiff's constitutional claims against the Federal Defendants occurred in Illinois, however, and the claims against the Federal Defendants are thus governed by the Illinois statute of limitations.

11, 2011. Plaintiff filed the Sixth Amended Complaint, adding Lee, Pasqual, Roecker, and Bella as defendants, on June 3, 2016, more than five years after this date.

Plaintiff alleges that he received threats on later dates as well. He was called "sapo," or snitch, on November 17, 2011, and his family alerted him to further threats in October 2015. [175] ¶¶ 87–97. But the "injury" that Plaintiff must know of to start the clock on the statute of limitations includes both current and future harm: "understanding all consequences [of a wrong and impending injury] may take years, so that postponing accrual of the claim until the extent of the injury is certain would make statutes of limitations ineffectual." *Leavell*, 189 F.3d at 495. Plaintiff's claims against Lee, Pasqual, Roecker, and Bella were thus filed outside of the applicable statute of limitations.

### 2. Equitable Tolling

In his Sixth Amended Complaint, Plaintiff alleges in anticipation of this defense that the statute of limitations should be equitably tolled: (1) because Defendants have a fiduciary duty to Plaintiff, including the duty to disclose; (2) by the doctrine of equitable estoppel; and/or (3) by the discovery rule. See [175] at 34. The Federal Defendants do not respond to these arguments.

Because Illinois law provides the statute of limitations for Plaintiff's *Bivens* claims, Illinois law of equitable tolling applies as well. *Elmore v. Salas*, 2016 WL 2755326, at *7 (N.D. Ill. May 12, 2016) (citing *Shropshear v. City of Chi.*, 275 F.3d 593, 596 (7th Cir. 2001)). In Illinois, equitable tolling of a statute of limitations may be appropriate where "the defendant has actively misled the plaintiff, or if the plaintiff has been prevented from asserting his or her rights in some extraordinary way, or if the plaintiff has mistakenly asserted his or her rights in the wrong forum." *Clay v. Kuhl*, 727 N.E.2d 217, 223 (Ill. 2000); see also *Rosado v. Gonzalez*, 832 F.3d 714, 717 (7th Cir. 2016). A defendant who owes a fiduciary duty to a plaintiff and

fraudulently conceals a cause of action from him may also toll the relevant statute of limitations. See *DeLuna v. Burciaga*, 857 N.E.2d 229, 245–47 (Ill. 2006).[6] The kinds of "extraordinary barriers" beyond defendants' conduct that may prevent a plaintiff from asserting his rights include "legal disability, an irredeemable lack of information, or situations where the plaintiff could not learn the identity of proper defendants through the exercise of due diligence." *Thede v. Kapsas,* 897 N.E.2d 345, 351 (Ill. App. Ct. 2008). Illinois also recognizes that the "discovery rule" may toll the statute of limitations until the "the injured person becomes possessed of sufficient information concerning his injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved." *Sroga v. De Jesus*, 2013 WL 2422869, at *4 (N.D. Ill. June 3, 2013) (citing *Knox Coll. v. Celotex Corp.*, 430 N.E.2d 976, 980–81 (Ill. 1981)).

The Sixth Amended Complaint fails to allege facts that support tolling of the statute of limitations under any of Plaintiff's theories. None of the allegations that Plaintiff makes in his complaint point to conduct by the Federal Defendants that prevented him from becoming aware of his injuries or from filing suit against them that would support equitable estoppel here, either generally or based on a breach of fiduciary duty more specifically. Plaintiff does not allege, for example, that the Federal Defendants concealed the issuance of the material witness warrant from Plaintiff in any way. There is no indication that these defendants "prevented discovery of the cause of action" such that the limitations period can be tolled. *DeLuna*, 857 N.E.2d at 245.

---

[6] The Seventh Circuit recognizes a difference between equitable tolling, which permits plaintiffs to avoid the statute of limitations if, "despite the exercise of all due diligence he is unable to obtain vital information bearing on the existence of his claim," and equitable estoppel, which permits plaintiffs to avoid the statute of limitations if "the defendant takes active steps to prevent the plaintiff from suing in time." *Shropshear*, 275 F.3d at 595. The Seventh Circuit has also noted that Illinois courts appear to conflate these two doctrines. See, *e.g.*, *Fidelity Nat'l Title Ins. Co. of N.Y. v. Howard Sav. Bank*, 436 F.3d 836, 839 (7th Cir. 2006). Whether Illinois courts recognize a distinction between equitable estoppel and equitable tolling remains unresolved. *Hobbs v. Cappelluti*, 899 F. Supp. 2d 738, 760 (N.D. Ill. 2012). Because the Sixth Amended Complaint argues that both equitable estoppel and equitable tolling could apply to defeat a statute of limitations defense, the two doctrines are treated together here.

In fact, Plaintiff's Sixth Amended Complaint contains specific allegations regarding threats made against him as a result of the public disclosure of his CHS status in January and November of 2011.  [175] ¶¶ 80, 97.  He thus knew enough at that point about "his injury and its cause" to investigate whether the conduct of the Federal Defendants in obtaining the material witness warrant and in publicly identifying his informant status was actionable.  *In re marchFIRST Inc.*, 589 F.3d 901, 904 (7th Cir. 2009) (citing *Knox Coll.*, 430 N.E.2d at 980–81).  Accordingly, Plaintiff cannot claim that the statute of limitations was equitably tolled or claim the benefit of equitable estoppel to prevent the limitations bar to his claims against the newly-added individual Federal Defendants.

### 3.    Relation Back under Federal Rule of Civil Procedure 15(c)(1)(C)

The parties have not raised the issue of whether Plaintiff's claims against the new individual Federal Defendants could survive because they relate back to the original complaint— filed on June 13, 2012—under Rule 15(c)(1)(C).  Because of Plaintiff's *pro se* status, the Court will nonetheless consider this possibility.

Rule 15(c)(1)(C) states that an amendment changing the name of a party or adding a new party relates back to the date of the original pleading where, within the period provided by Rule 4(m) (90 days) for serving the summons and complaint, the new party "(i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity."  Fed. R. Civ. P. 15(c)(1)(C).  The Seventh Circuit has held that for an amended pleading to relate back, the plaintiff must have made a mistake in naming the proper party; mere failure to identify the right party to sue does not satisfy the mistake requirement.  See *King v. One Unknown Fed. Corr. Officer*, 201 F.3d 910, 914 (7th Cir. 2000) (Rule 15 does not

provide for relation back in these circumstances when a plaintiff has "a simple lack of knowledge of the identity of the proper party").

Here, there is no error on Plaintiff's part that would permit his claims against Lee, Pasqual, Roecker, and Bella to relate back to his original filing of the complaint on June 13, 2012. In his original complaint, Plaintiff did name a John Doe Assistant United States Attorney, Roecker, the DEA, the FBI, the DOJ, and the United States as defendants in addition to Kubiatowski. [14.] The First Amended Complaint [17] eliminated all federal defendants except for Kubiatowski, however, and no summons was ever issued to any federal defendant except for Kubiatowski. Plaintiff did not make a mistake about which federal defendant to sue. Rather, it appears that he did not intend to proceed with his suit against these individuals and agencies when he brought his complaint originally. Plaintiff cannot use Rule 15(c) to relate his amended pleading back to his original pleading.

In sum, the Sixth Amended Complaint's allegations demonstrate that Plaintiff's claims against the new individual Federal Defendants were filed outside of the relevant limitations period, and that there is no basis for tolling the relevant limitations period or for concluding that the amendments adding new defendants relate back to the original complaint. Counts I, II, III, and IV against Lee, Pasqual, Roecker, and Bella therefore must be dismissed.[7]

**B.      Claims Against Defendant Kubiatowski**

Plaintiff brings Counts I, II, III, and IV against Kubiatowski. Kubiatowski makes several arguments in support of his motion to dismiss the claims against him. First, he moves to dismiss the Fourth and Fifth Amendment claims (Counts I and II) against him to the extent that they seek liability beyond alleged violations of Federal Rule of Criminal Procedure 46(h)(2). [198] at 14.

---

[7] In view of this disposition, the Court will not address the Federal Defendants' other arguments in support of their motion to dismiss.

Second, Kubiatowski argues that to the extent Plaintiff is seeking relief against him under the Declaratory Judgment Act for Fourth and Fifth Amendment violations (Counts I, II, and III), Plaintiff does not have standing to pursue such relief. [198] at 5–7. Third, he moves to dismiss the state-created danger claim (Count III) against him as barred by the relevant statute of limitations or, alternatively, for failure to state a claim. [198] at 3–4, 9–12. Finally, he argues that Plaintiff's equal protection claim (Count IV) should be dismissed for failure to state a claim. [198] at 12–13.

### 1.    Fourth and Fifth Amendment Claims (Counts I and II)

Kubiatowski moves to dismiss Counts I and II against him to the extent that these counts seek liability beyond alleged violations of Federal Rule of Criminal Procedure 46(h)(2). [197.] The Court has previously limited the due process and Fourth Amendment claims against Kubiatowski in his individual capacity to Kubiatowski's alleged failure to comply with Federal Rule of Criminal Procedure 46(h)(2). [98] at 27, [172] at 11, [180] at 1–2. The Court has also stated that, as it read the Sixth Amended Complaint, it is already limited to the allegation that Kubiatowski violated Rule 46(h)(2) and clarified that Plaintiff could only proceed with these claims based on this conduct. [172] at 18, [180] at 2. Therefore, Kubiatowski's motion to dismiss Counts I and II is granted on the understanding that Plaintiff may proceed with Count I and Count II against Kubiatowski in his individual capacity as they relate to Kubiatowski's alleged failure to comply with Federal Rule of Criminal Procedure 46(h)(2) only.[8]

### 2.    State-Created Danger Claim (Count III)

---

[8] To the extent that in Counts I and II, Plaintiff is seeking declaratory or injunctive relief against Kubiatowski for failure to comply with Federal Rule of Criminal Procedure 46(h)(2), Plaintiff has failed to show that he has standing to bring claims for such relief for the same reasons articulated below regarding the agency Federal Defendants.

Kubiatowski moves to dismiss the state-created danger claim brought against him (Count III). He first argues that this claim is barred by the statute of limitations. As with the other individual Federal Defendants, the statute of limitations on this claim is two years. 735 ILCS 5/13-202; *Delgado-Brunet*, 93 F.3d at 342. The Sixth Amended Complaint was filed more than two years after Plaintiff first became aware of threats made against him as a result of the release of his name in the material witness warrant application. [175] ¶ 80. However, the state-created danger claim against Kubiatowski does relate back to the filing of the original complaint on June 13, 2012. See Fed. R. Civ. P. 15(c). Rule 15(c) allows relation back where "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). The original complaint naming Kubiatowski as a defendant contains allegations that Plaintiff was denied promised protection in exchange for serving as a confidential informant; that Plaintiff received death threats related to his work as a confidential informant; that Plaintiff was detained as a material witness; and that Kubiatowski failed to comply with Federal Rule of Criminal Procedure 46(h). [14] ¶¶ 11–12, 92–93, 206, 212. This same conduct forms the basis of the state-created danger claim in Count III. See *Neita v. City of Chi.*, 830 F.3d 494, 498 (7th Cir. 2016) (holding that an amendment to a complaint filed past the statute of limitations related back to the filing of the original complaint because the original complaint described Plaintiff's arrest and all relevant conduct alleged in the amended complaint flowed from that arrest). Count III as to Kubiatowski therefore relates back to the filing of the original complaint on June 3, 2012 and cannot be dismissed as to Kubiatowski on the basis of untimeliness alone.

Kubiatowski also argues that Plaintiff has failed to state a state-created danger claim. The Due Process Clause generally does not give individuals a right to protection from the

government against private violence. *Sandage v. Bd. of Comm'rs of Vanderburgh Cty.*, 548 F.3d 595, 596 (7th Cir. 2008) (citing *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989)). There are two exceptions to this general principle. First, the state has a duty to protect a person with whom it has a "special relationship," such as when the state has custody over that person. *Doe v. Vill. of Arlington Heights*, 782 F.3d 911, 916 (7th Cir. 2015). Second, liability exists under the "state-created danger" exception where "the state affirmatively places a particular individual in a position of danger the individual would not otherwise have faced." *Id.* at 916–17 (citation omitted). With both exceptions, "the victim is safe before the state intervenes and unsafe afterward." *Sandage*, 548 F.3d at 598.

To establish a Fifth Amendment state-created danger claim in the Seventh Circuit, Plaintiff must allege that: (1) the state, by its affirmative acts, created or increased a danger that Plaintiff faced; (2) that the state's failure to protect Plaintiff from danger was the proximate cause of Plaintiff's injury; and (3) that the state's failure to protect Plaintiff shocks the conscience. *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *King ex rel. King v. East St. Louis Sch. Dist. 189*, 496 F.3d 812, 818 (7th Cir. 2007)). This is a narrow exception, and liability attaches in cases that are "rare and often egregious." *Doe*, 782 F.3d at 917 (citing *Estate of Allen v. City of Rockford*, 349 F.3d 1015, 1022 (7th Cir. 2003)).

Plaintiff alleges that Kubiatowski, along with the other Federal Defendants, knowingly and willingly agreed to lure Plaintiff into serving and continuing to serve as a CHS based on false promises that Plaintiff would receive permanent residency, that his identity would be kept secret, and that witness protection would be provided if his identity was disclosed. Plaintiff further alleges that Kubiatowski placed Plaintiff in danger by failing to follow through on these promises, as evidenced by the various threats made against him. [175] ¶¶ 37–38, 53–58, 65–68,

77–81, 105.  Plaintiff alleges that Kubiatowski inquired into getting an S-1 visa for Plaintiff but was told it would not be possible, and that Kubiatowski was informed of the threats against Plaintiff in January 2011 but failed to investigate them.  *Id.* ¶¶ 57, 80–81.

This conduct is affirmative in that Plaintiff alleges that Kubiatowski took steps to create the danger to Plaintiff by inducing his cooperation and publicly releasing his CHS status, rather than merely failing to reduce a danger that Plaintiff independently faced.  This satisfies the first element of a state-created danger claim.  *Sandage*, 548 F.3d at 599.  See also *Monfils v. Taylor*, 165 F.3d 511, 518 (7th Cir. 1998) (holding that a defendant was not entitled to qualified immunity on state-created danger claim where he had promised an informant that a tape of his tip would not be released, but then failed to stop that tape from being released by another officer).[9] Plaintiff alleges that the failure to protect Plaintiff after his public identification as a CHS caused threats against his safety and caused him to abandon his home in Chicago.  [175] ¶¶ 82–97.  This satisfies the second element of a state-created danger claim.

But Plaintiff has not satisfactorily alleged that Kubiatowski's conduct shocks the conscience.  The Supreme Court has held that state action that shocks the conscience is conduct that is "arbitrary in the constitutional sense."  *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998).  This element of a state-created danger claim "is a reminder that liability for a

---

[9] Kubiatowski argues that the Supreme Court in *Town of Castle Rock v. Gonzales*, 545 U.S. 748 (2005), essentially eliminated the state-created danger exception to *DeShaney*.  [198] at 10, citing *Sandage*, 548 F.3d at 596–99.  The Seventh Circuit, along with other circuits, has continued to recognize the exception and read *Castle Rock* only as foreclosing a due process claim based on state "inaction in the face of private violence."  *Wilson-Trattner v. Campbell*, 863 F.3d 589, 596 (7th Cir. 2017); *Sandage*, 548 F.3d at 599 (distinguishing *Monfils* on the basis of the action-inaction distinction before noting that *Monfils* might be in tension with *Castle Rock*).  See also, *e.g.*, *Robinson v. Lioi*, 536 F. App'x 340, 345–46 (4th Cir. 2013) (holding that police officer's conduct in interfering with the execution of an arrest warrant was an affirmative act sufficient to state a state-created danger claim as distinguished from *Castle Rock*); *Caldwell v. City of Louisville*, 200 F. App'x 430, 435 (6th Cir. 2006) ("There is nothing in *Castle Rock* that compels a conclusion the Supreme Court intended to eliminate the state-created-danger exception to the *DeShaney* rule.").

constitutional tort requires proof that the defendant acted (or failed to act) not merely negligently but recklessly (equivalently, with 'deliberate indifference' to the risk of harm that he was creating)." *Sandage*, 548 F.3d at 599 (citing *King*, 496 F.3d at 818–20). Deliberate indifference may satisfy this standard, depending on the circumstances. *McDowell v. Vill. of Lansing*, 763 F.3d 762, 766 (7th Cir. 2014) (citing *Lewis*, 523 U.S. at 851). See also *Vaughn v. City of Chi.*, 2014 WL 3865838, at *3 (N.D. Ill. Aug. 5, 2014) (holding that ordering a man to drop the stick he was using as self-protection and then watching while someone beat him to death demonstrated reckless indifference and thus shocked the conscience); *Whitted v. Dart*, 2014 WL 2819004, at *6–7 (N.D. Ill. June 23, 2014) (holding that defendant's conduct in failing to adequately train personnel on properly separating adult and juvenile detainees evinced deliberate indifference and thus shocked the conscience, where this failure led to the plaintiff's assault).

In cases involving the safety of confidential informants, courts have found that "there is 'no explicitly recognized right to security from violence for confidential police informants.'" *Starr v. Sacluti*, 2010 WL 276695, at *4 (N.D. Ill. Jan. 19, 2010) (citing *Gatlin v. Green*, 227 F. Supp. 2d 1064, 1075 (D. Minn. 2002)). See also *Matican v. City of New York*, 524 F.3d 151, 157–59 (2d Cir. 2008) (holding that police officers' failure to protect confidential informant's identity after a sting operation, after promising informant that they would do so, did not shock the conscience where the officers had competing factors, including their own safety, beyond the informant's safety to consider).

Here, the allegations in the Sixth Amended Complaint do not reach the level of egregiousness necessary to shock the conscience. Plaintiff alleges that Kubiatowski inquired into getting an S-1 visa for Plaintiff but was told it would not be possible. [175] ¶ 57. This does not resemble the kind of conduct that is deliberately indifferent to Plaintiff's rights and safety.

Plaintiff also alleges that Kubiatowski was informed of the threats against Plaintiff in January 2011 but failed to investigate them. *Id.* ¶¶ 80–81. This conduct did not increase the danger that Plaintiff faced from private actors and instead is analogous to the type of inaction that cannot form the basis of a state-created danger claim. See *Sandage*, 548 F.3d at 600 ("When courts speak of the state's 'increasing' the danger of private violence, they mean the state did something that turned a potential danger into an actual one, rather than that it just stood by and did nothing to prevent private violence.").

For all of these reasons, Count III against Kubiatowski is dismissed.

### 3. Equal Protection Claim (Count IV)

Kubiatowski moves to dismiss the equal protection claim against him (Count IV) for failure to state a claim. While the Fifth Amendment does not have an Equal Protection Clause, the Fifth Amendment's Due Process Clause contains an equal protection component applicable to the federal government. *Estate of Kunze v. C.I.R.*, 233 F.3d 948, 954 (7th Cir. 2000). The scope of equal protection under the Fifth Amendment's Due Process Clause is essentially the same as that available under the Fourteenth Amendment's Equal Protection Clause. *Id.* To state a claim for an equal protection violation, Plaintiff must allege (1) that he is a member of a protected class, (2) that he is similarly situated to members of the unprotected class, and (3) that he was treated differently from members of that unprotected class. *McNabola v. Chi. Transit Auth.*, 10 F.3d 501, 513 (7th Cir. 1993). He must also allege that defendants acted with discriminatory intent. *Id.*

Plaintiff fails to state a claim for an equal protection violation in the Sixth Amended Complaint. Plaintiff's only allegations related to this claim are that that his arrest and detention "was based only on his ethnicity," that the material witness warrant was issued "based on the

allegations of [Plaintiff's] imminent deportability because of his race or nationality," and that "[b]y unlawfully classifying [Plaintiff] as [a] flying risk alien * * * Defendants deliberately and unconstitutionally discriminated against [Plaintiff] on the basis of his race and ethnicity so as to deny him equal protection of the law." [175] ¶¶ 47–48, 163. Plaintiff does not allege that he is similarly situated to members of an unprotected class or that he was intentionally treated differently from members of that unprotected class. *McNabola*, 10 F.3d at 513.

Therefore, Count IV against Kubiatowski is dismissed.

## C. Claims Against the Agency Federal Defendants

Plaintiff brings Counts I, II, III, and V against the FBI, DEA, USAO, DOJ, and United States. These "Agency Federal Defendants" argue that Plaintiff has not stated a viable claim for declaratory relief against them because (1) Plaintiff does not have standing to bring these claims against them, and (2) no relief providing Plaintiff with his allegedly promised protection is available under the Administrative Procedure Act ("APA"). [198] at 5–7.

As set out in the Court's previous opinion, [172] at 21–22, *Bivens* claims for damages cannot be brought against federal agencies. *Meyer*, 510 U.S. at 485–86. Therefore, Plaintiff can only seek relief other than money damages from the Agency Federal Defendants.

In the Sixth Amended Complaint, Plaintiff seeks two kinds of declaratory and injunctive relief. First, he seeks relief related to his past arrest and detention, including a declaration that Defendants' actions violated the Constitution, the Material Witness Statute, the Bail Reform Act, and the common law; a declaration that Defendants' actions regarding Plaintiff's arrest and detention was unconstitutional; an injunction preventing Defendants from subjecting Plaintiff to this unconstitutional conduct; and an injunction preventing defendants from authorizing or conducting unreasonable arrests of material witnesses. [175] at 33. Second, Plaintiff seeks an

injunction prohibiting Defendants from denying him "the benefits of his special relationship with the government not limited to[] but including his agreement for protection." *Id.*

The Agency Federal Defendants argue that Plaintiff has no standing to bring these claims for injunctive and declaratory relief. Article III of the Constitution requires that a plaintiff seeking to invoke the federal courts' jurisdiction satisfy the requirement of alleging an actual "case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). To satisfy this requirement, a plaintiff must show that he has a "personal stake in the outcome" of the litigation. *Id.* Without such standing, the federal courts have no jurisdiction to hear a case. *Id.* When seeking injunctive and declaratory relief, the type of "personal stake" that a plaintiff must demonstrate is that "he is in immediate danger of sustaining some direct injury." *Robinson v. City of Chi.*, 868 F.2d 959, 966 (7th Cir. 1989). Evidence of past injury by itself is insufficient. *Stewart v. McGinnis*, 5 F.3d 1031, 1037–38 (7th Cir. 1993) (citing *Lyons*, 461 U.S. at 102).

To the extent that he seeks declaratory and injunctive relief related to his past detention and arrest on the material witness warrant issued in *United States v. Diaz*, Plaintiff lacks standing. Plaintiff was released from custody based on the material witness warrant on February 1, 2011. He has not alleged that he is in immediate danger of being re-arrested on a material witness warrant, of being subjected to the allegedly unconstitutional conditions of detention to which he was previously subjected, or of having his name re-released. Any allegation that he would be subject to the same treatment again at the hands of these Federal Defendants would be too speculative to establish standing. See, *e.g.*, *Polk v. Dent*, 2015 WL 2384601, at *3 (N.D. Ill. May 19, 2015) (holding that, to have standing for equitable relief, "Plaintiffs would have to allege, at a minimum, that they face a real and immediate threat of being stopped by the police *again* and subjected to excessive force and/or an unlawful search.") (emphasis in original); *Otero*

*v. Dart*, 2012 WL 5077727, at *4–5 (N.D. Ill. Oct. 18, 2012) (holding that plaintiff challenging the Chicago police department's detention policies did not have standing to seek equitable relief because he was no longer incarcerated or detained, and he could only speculate that he would be incarcerated or detained again).

To the extent that Plaintiff seeks declaratory and injunctive relief related to the alleged threats against his safety and the alleged promises that the government made to provide him with protection, the Agency Federal Defendants argue that Plaintiff is not entitled to the relief he has requested related to these allegations—an injunction prohibiting Defendants from denying him the promised protection—because no such relief is available under the APA. [172] at 7, citing 5 U.S.C. § 701(a).

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *Meyer*, 510 U.S. at 475. Under the APA, the federal government has waived sovereign immunity in suits brought against agencies for "relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority." 5 U.S.C. § 702.[10] See also *Michigan v. U.S. Army Corps of Engineers*, 667 F.3d 765, 775 (7th Cir. 2011) (waiver of sovereign immunity in Section 702 applies to cases involving constitutional challenges and other federal claims). The APA does not apply, however, where "agency action is committed to agency discretion by law." *Heckler v. Chaney*, 470 U.S. 821, 828 (1985) (citing 5 U.S.C. § 701(a)(2)). Agency action is generally considered committed to agency discretion by law when there is "no meaningful standard against which to judge the agency's exercise of discretion." *Id.* at 830.

---

[10] The Declaratory Judgment Act, 28 U.S.C. §§ 2201–02, does not operate as a separate waiver of sovereign immunity: it merely creates a remedy in cases over which the federal courts already have jurisdiction. *Balistrieri v. United States*, 303 F.2d 617, 619 (7th Cir. 1962).

Plaintiff does not point to a particular statute or policy that requires that the Agency Federal Defendants provide him with protection: he points only to the promises that were allegedly made to him by the Defendants in the course of his work as a CHS. No authority appears directly on point because of the *sui generis* nature of the facts here. Analogous case law indicates, however, that prosecutorial enforcement decisions, and decisions to provide protection for specific individuals, are discretionary acts that are not reviewable under Section 702. *Cf. Kirk v. U.S. Dep't of Justice*, 2016 WL 1718333, at *2–3 (S.D. Ill. Apr. 29, 2016) (holding that a prosecutor's decision not to request a sentencing reduction was an exercise of prosecutorial discretion that was "presumptively unreviewable"); *Auleta v. U.S. Dep't of Justice*, 80 F. Supp. 3d 198, 202 (D.D.C. 2015) (holding that the DOJ's decision not to investigate claims of religious discrimination and retaliation was within the agency's "absolute discretion" and not subject to judicial review); *Zhou v. Peng*, 286 F. Supp. 2d 255, 265 (S.D.N.Y. 2003) (holding that the Department of State's decision to provide protection to a visiting foreign official was discretionary and judicially unreviewable). See also *Ochran v. United States*, 117 F.3d 495, 501–02 (11th Cir. 1997) (holding that an Assistant U.S. Attorney's decision regarding how to best protect an informant is discretionary and thus not actionable under the Federal Tort Claims Act). Therefore, the decision whether to provide Plaintiff with protection was a discretionary one that is unreviewable under Section 702, and Plaintiff has no cause of action for relief.

Because Plaintiff has not stated a claim for injunctive or declaratory relief, Counts I, II, III, and V against the agency Federal Defendants are dismissed.

## IV.    Conclusion

Federal Defendants' motion [197] is granted. Counts I, II, III, IV, and V are dismissed as to Defendants Pasqual, Lee, Roecker, Bella, FBI, DEA, USAO, DOJ, and United States.

Plaintiff may proceed with Count I and Count II as they relate to Kubiatowski's alleged failure to comply with Federal Rule of Criminal Procedure 46(h)(2) only and are otherwise dismissed. Counts III and IV are dismissed as to Kubiatowski. This case is set for further status hearing on October 11, 2017 at 10:15 a.m.

Dated: September 26, 2017

_____
Robert M. Dow, Jr.
United States District Judge